UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DeANDRE L. KENDRICK,<br><br>Plaintiff,<br><br>v.<br><br>MIKE BRAUN, LLOYD ARNOLD, JASON SMILEY, COMMISSIONER OF PRISONS, LIEWS, JACKSON, CHRISTIAN BRYANT, ELLIS, CHELSEA REISE, JENKINS, STACEY HICKMAN, KATIE JACOBS, BRUBAKER, NURSE, DIRECTOR OF MEDICAL, OWNER, OWNER, COMMISSIONER, SUMMERS, EVANS, GONZALES, REED, CHAPMAN, FYKE, and BERES,<br><br>Defendants. | CAUSE NO. 3:25-CV-573-PPS-AZ |

OPINION AND ORDER

DeAndre L. Kendrick, a prisoner without a lawyer, alleges that he has been suffering from severe abdominal pain at Westville Correctional Facility for more than a year and that he is not receiving adequate medical care. He filed a complaint for damages and a motion for a preliminary injunction seeking treatment by an outside doctor. ECF 6, ECF 9. Under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

In his complaint, Kendrick details the medical treatment he has received for his abdominal pain going back to September 2024. These allegations show that Kendrick has been suffering for nearly a year. But in reviewing his allegations, it is important to keep in mind the Eighth Amendment standard of deliberate indifference that applies to this case. The Constitution doesn't guarantee prisoners successful medical treatment. *See Knight v. Wiseman*, 590 F.3d 458, 467 (7th Cir. 2009) ("The Eighth Amendment does not require prison officials to provide flawless treatment . . . ."). Instead, prisoners are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To state an Eighth Amendment claim for the denial of the right to adequate medical care, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal

recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698 (citations and quotations omitted). Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Persisting with a course of treatment known to be ineffective can amount to deliberate indifference. *Id.*

Kendrick begins his complaint by describing a Health Care Request Form ("HCRF") he submitted on September 8, 2024, stating that he was having abdominal pains and that the meds were not working. He was not seen right away and followed that request up with a second one on September 16, 2024, stating that he was having severe abdominal pain and cramps; at times, the pain in the middle of his stomach made it hard to stand. He wrote that the medication he had been prescribed did not work and he was still in pain. Kendrick saw Dr. Liaw on September 17, 2024, but Kendrick doesn't describe what happened at that visit or say what conclusions Dr. Liaw drew about his condition.

Next, Kendrick alleges that on September 21, 2024, he submitted another HCRF due to having abdominal pain so severe he could not eat or sleep. He said that he had lost over 20 pounds due to not eating. That HCRF was denied because he had just been seen on September 17, 2024.

In the meantime, Kendrick had labs taken, which came back normal. He alleges he was left in pain for months after advising medical staff that the medication he was on did not work.

On December 3, 2024, Kendrick filed another HCRF, complaining about having been placed on medication that he had already tried before and found to be ineffective. He asked to see the Director of Medical.

4

Kendrick alleges he was then prescribed Omeprazole for two months.[1] After just a week on the new medication, he filled out another HCRF, advising medical staff that the new medication had no meaningful effect on the abdominal pain. He also stated that he was starting to experience a throbbing in his chest and heart area. Dr. Jackson was notified, and he put Kendrick on a new medication (Carafate), a medication used to treat gastrointestinal ulcers. He also ordered bloodwork and abdominal x-rays (an acute abdomen series) on December 25, 2024.

Dr. Jackson instructed that Kendrick take Carafate four times a day for thirty days. However, instead of following those instructions, the nurses gave him two doses of the medication two times a day.

Kendrick alleges he began to feel ill and the abdominal pains began to increase after consuming the medication. He submitted another HCRF on December 31, 2024, that resulted in him being put back on Carafate. The unknown doctor also ordered an abdominal x-ray and a stool sample to be tested for H. pylori, a bacteria that can cause a stomach infection that can result in stomach pain, bloating, or gas, and can sometimes lead to peptic ulcers in the lining of the stomach or small intestine. *See Helicobacter pylori (H. pylori) infection*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited Aug. 21, 2025). Kendrick objected

---

[1] "Omeprazole is used to treat certain conditions where there is too much acid in the stomach. It is used to treat gastric and duodenal ulcers, erosive esophagitis, and gastroesophageal reflux disease (GERD). GERD is a condition where the acid in the stomach washes back up into the esophagus. Sometimes omeprazole is used in combination with antibiotics (eg, amoxicillin, clarithromycin) to treat ulcers associated with the infection caused by the H. pylori bacteria." *Omeprazole (oral route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/omeprazole-oral-route/description/drg-20066836 (last visited Aug. 21, 2025).

to being prescribed Carafate because he experienced increased pain the last time he took it.

Kendrick alleges that at this point, his medical requests were not being answered because there was a shortage of medical staff. Kendrick's pleas, therefore, fell on deaf ears. He tried to get help from correctional officers, telling them that he needed immediate medical attention, given the amount of abdominal pain he was in. But no one pulled him from his cell to take him to medical or otherwise got him medical care.

Kendrick alleges that, next, he was asked to provide another stool sample and was given another set of abdominal x-rays. He does not say what those tests revealed, but he concludes his complaint with stating that his medical condition has worsened and he's not receiving medical assistance at Westville.

Kendrick's allegations describe a frustrating treatment journey for what appears to be a serious medical need. But the allegations don't plausibly add up to deliberate indifference on the part of any individual defendant.

After Kendrick submitted health care requests in September 2024, he was seen by Dr. Liaw. He does not say what Dr. Liaw prescribed him or what happened at that visit, but it is clear he got some care, even if in the end that care was not effective. Without some facts to suggest Dr. Liaw did not rely on medical judgment at that visit, the court cannot allow a claim to proceed against him for deliberate indifference just because the treatment did not work.

As to the December 2024 HCRF about Kendrick's continued abdominal pain, he was prescribed a different medication, Omeprazole. Changing his prescription shows

6

that medical staff were responding to his medical complaints, and there are no facts that allow a reasonable inference that this decision was not based on medical judgment.

When Kendrick complained that the Omeprazole was not working and he was experiencing chest pain, Dr. Jackson responded by changing Kendrick's medication yet again, this time to Carafate. He also ordered bloodwork, and had x-rays taken of Kendrick's abdomen. These actions do not allow a reasonable inference that Dr. Jackson acted with deliberate indifference to Kendrick's medical needs.

Kendrick alleged that his abdominal pain began to increase after taking the medication, but an unknown doctor responded to his HCRF by continuing him on Carafate, ordering abdominal x-rays, and ordering a stool sample. Kendrick believes it was inappropriate to continue him on Carafate after it had not worked before, but there is not enough information for me to infer that this decision could be deliberate indifference because the additional tests—the x-ray and the stool sample—show that the doctor was still working towards resolving Kendrick's pain.

Finally, Kendrick alleges that when his pain still did not go away, he was asked to provide another stool sample and was given another x-ray of his abdomen. Kendrick seems to suggest that repeating the same tests that had just been done implies the doctor was persisting with a course of treatment known to be ineffective. But because Kendrick does not say what the prior tests revealed, I cannot reasonably infer that these tests were redundant and not medically appropriate to check the progress of Kendrick's condition or to confirm the prior results. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). I must give Kendrick the benefit of all reasonable inferences. But that does not require me to speculate about the doctor's actions when Kendrick would know what he has been diagnosed with and what the tests revealed.

In addition to the doctors, Kendrick sues three other groups of defendants. First, he sues six correctional officers he says he complained to about his abdominal pain and who did not immediately pull him out of his cell for medical care. This allegation is too vague to state an Eighth Amendment claim. He does not describe the symptoms he was experiencing for this ongoing medical condition that would have alerted the correctional officers he needed emergency medical care and that could not be addressed through a HCRF.

Kendrick sues the eight nurses he says incorrectly administered the Carafate prescription. It could be deliberate indifference for a nurse to deliberately disregard a doctor's dosing instructions. But the fact that *eight* nurses allegedly got the dosage wrong in the same way cuts against an inference that each nurse took it upon himself or

8

herself to alter the dosing. Kendrick provides no additional information about his individual interactions with the nurses to nudge this claim into the plausible.

Finally, Kendrick sues several high-level officials, ranging from the owner of the medical company providing medical care at the prison, to the Warden of Westville, to Governor of Indiana and others. A claim under 42 U.S.C. § 1983 requires personal involvement in the alleged constitutional violation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). This means that supervisors cannot be held liable just because their subordinates may have violated the constitution; to be held liable a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Any amended complaint should be limited to defendants who had personal involvement in the alleged constitutional violations, and Kendrick should leave out high-level officials who did not make any decisions regarding his medical care.

Ultimately, I can understand why Kendrick believes he is receiving unconstitutional care: he is still in pain. But he omits any allegations about diagnoses or test results he has received. Thus, it is unclear whether the doctors are trying different treatments to resolve a hard medical case or whether they are persisting in ineffective treatment. Unsuccessful results, alone, do not show that the doctors were deliberately indifferent to Kendrick's medical needs.

This complaint does not state a claim for which relief can be granted. If Kendrick believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil

cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

Kendrick also filed a motion for a preliminary injunction, asking to be sent to an outside doctor. ECF 9. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, because the complaint does not state a claim, Kendrick has no chance of success of the merits. His motion will be denied.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 9);

(2) GRANTS DeAndre L. Kendrick until **September 29, 2025**, to file an amended complaint; and

(3) **CAUTIONS** DeAndre L. Kendrick if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED:

ENTERED: August 25, 2025.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**